## S. RICHARD DAVIDGE, Respondent, v. GUARDIAN TRUST COMPANY OF NEW YORK, Appellant.

Trust companies — duties and powers — when trust company not liable for erroneous statements of an officer thereof as to value and validity of bonds for which it was trustee.

1. Trust companies should be confined not only within the words, but also within the spirit, of the statutory provision which declares that a corporation shall not possess or exercise any corporate powers not given by law or not necessary to the exercise of the powers so given. Such authority does not permit a trust company to enter into speculative and uncertain schemes, or, unless under peculiar circumstances, become the guarantor of the indebtedness or business of others.

2. The plaintiff, a real estate improvement company, executed to the defendant, a domestic trust company, a mortgage covering a tract of land to secure bonds to be issued by the improvement company. There were five prior mortgages on the property and a sale under prior mortgages left a deficiency. This action is brought to recover plaintiff's loss on bonds purchased by him. Evidence was given that a vice-president of the defendant stated, in answer to an inquiry made by plaintiff at the time of his purchase from a third party, that these were first mortgage bonds. It is not shown that defendant was in any way interested in the improvement company or the bonds to secure which the trust mortgage was given, or that it was to receive a commission or pecuniary advantage by the sale of the bonds. *Held, first,* defendant was not required by the trust mortgage, nor, so far as appears, was it authorized by statute or otherwise to make representations to prospective purchasers as to the value of the bonds or to insure the title to the mortgaged property or the relative priority of the trust mortgage upon the improvement company's real property. *Second,* there is no presumption of law that the vice-president of defendant had authority to make representations on its behalf in regard to the priority of the trust mortgage as a lien upon the property.

*Davidge* v. *Guardian Trust Co.*, 136 App. Div. 78, reversed.

(Argued October 20, 1911; decided November 21, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department,

entered January 31, 1910, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict.

On November 24, 1905, the Metropolitan Real Estate Improvement Company, a domestic corporation, executed to the defendant, Guardian Trust Company of New York, a domestic trust company corporation, a mortgage covering a large tract of land in the city of Yonkers, to secure two thousand bonds of $500.00 each, to be issued by said improvement company. The mortgage instrument includes a form · for the proposed bonds and also the covenants and agreements of the parties in detail. The material part of said bond is as follows:

" *   *   * THIS IS TO CERTIFY that in consideration of the sum of fifty dollars and the further payment of a like amount on each anniversary of the date hereof for nine years by          hereinafter called the owner, the Metropolitan Real Estate Improvement Company promises to pay to the owner ten years from the date hereof the sum of five hundred dollars in gold.   *   *   * This bond is one of a series of two thousand bonds of the denomination of five hundred dollars ($500) each numbered consecutively from one to two thousand inclusive amounting in the aggregate to one million dollars, all of which are equally secured by an Indenture of Mortgage bearing date the 24th day of November, A. D. 1905, whereby certain property now owned by this Company has been mortgaged to the Guardian Trust Company of New York City as trustee, and pledged for the benefit of the holders of said bonds. For a statement of the property pledged, the nature of the security, the rights of the holders of the said bonds and conditions upon which bonds are secured and issued reference is hereby made to said Indenture of Mortgage. It is further understood that the said Trustee shall have the right to release from the lien of the said Trust Mortgage any lot or lots that may be sold by this company in the course of its business

upon payment to the said Trustee of Two Thousand Dollars ($2,000) on each lot as shown on the map referred to in the said Trust Mortgage which payment shall constitute a sinking fund for the retirement of said bonds. This bond shall not be valid until the Guardian Trust Company shall endorse hereon a certificate that this bond is one of the series of bonds described in the said Indenture of Mortgage."

The form for the trustee's certificate to be executed by the defendant herein as trustee is therein set forth as follows:

"TRUSTEE'S CERTIFICATE.

"The Guardian Trust Company, as trustee, hereby certifies that the within bond is one of the series of bonds described in the trust Deed or Mortgage therein described.

"————, *Trustee.*"

Said mortgage contained the following provision: "Twentieth: Whereas there are now existing mortgages which are liens upon the property or a portion thereof hereinbefore described and upon which this mortgage is given and intended to become a lien before the maturity of the said existing mortgages which said mortgages are as follows: A Mortgage held by the Metropolitan Life Insurance Company for $120,000. A Mortgage held by the Valley Farms Company for $55,000. A Mortgage held by the Valley Farms Company for $8,400. Two Mortgages held by the Connecticut Building and Loan Association for $30,000 and $50,000 respectively all of which mortgages amount in the aggregate to the sum of $263,400. Whereas it is desired and intended to pay off the said mortgages and each of them out of the proceeds of the sale of the bonds herein described now Therefore it is hereby agreed by the said Company that during the third year of the life of this trust mortgage it will pay to the Guardian Trust Company as trustee the sum of $60,000 and during the fourth year of the life of this

mortgage the sum of $100,000 and such further sum or sums as may be necessary to pay the principal and interest due on the said mortgage and to procure the discharge and satisfaction thereof and the said Guardian Trust Company as trustee hereby agrees to apply such payments when so made to the payment and satisfaction of the said mortgages. That it will make such application of such payments pro rata unless the order of such application shall be differently directed by said Company in which case it will make such application of such payments as directed by such Company."

There is no provision in said mortgage or bond relating to or authorizing payment for said bonds to the improvement company other than as provided in the form of bond which we have quoted.

The twenty-fourth paragraph of said mortgage is as follows: "As a condition precedent to the acceptance of the said trust by the trustee herein it is further stipulated and agreed by the parties hereto and all present and future holders of bonds secured by these presents that the trustees shall not be answerable for any act, default, neglect or misconduct of any of its agents or employees by it appointed or employed in connection with the execution of any of the said trusts nor in any other manner answerable or accountable under any circumstances whatever except for bad faith that the recitals contained herein or in the bonds as priority of lien due authorization or any other matters whatsoever are made by and on the part of the Company and the trustee assumes no responsibility for the correctness of the same also that it shall be not a part of the duty of the trustee to file or record this indenture  *  *  *  nor shall it be any part of its duty to effect insurance against fire or other damage on any portion of the mortgaged property or to renew any policies of insurance or to keep itself informed as to the payment of taxes or assessments or to require such payment to be made but the trustee may in its dis-

cretion do any or all these things. The trustee shall not be compelled to take any action as trustee under this mortgage unless properly indemnified to its full satisfaction.   *   *   *."

Prior to December, 1906, the plaintiff had purchased of one Russell two bonds issued under said mortgage and had paid the first installment thereon. In December, 1906, said Russell solicited the plaintiff to make further purchases of said bonds and pay for them in full and hold them as "paid up bonds." The plaintiff went with said Russell to the city of New York, and on the morning of December 13th called at the office of the defendant and inquired for Mr. Robinson. The further testimony as to what occurred as given by the plaintiff, together with the objections to his answering the questions submitted to him in regard to the interview, appear in the record as follows: "Q. What, if any, conversation with reference to the bonds of the Metropolitan Real Estate Improvement Company did you have then and there with Mr. Robinson, a vice-president of the Guardian Trust Company of New York?

"Objected to on the ground it is incompetent, improper, not binding upon this defendant, hearsay as to this defendant, that it was a transaction not within the scope of the employment or course of the agency of Mr. Robinson, the vice president, and, therefore, anything that he may have said or may have done at that time is not binding upon this defendant. The Court: I will receive the evidence. Exception by defendant's counsel. Q. Give it as near as you can, word for word? A. I inquired for Mr. Robinson and he came to one of the windows; I asked him if—— I told him I came down to New York to get some information regarding those bonds; the Metropolitan Real Estate Improvement Company bonds. He asked me what I wanted to know about them. I asked him if he would tell me if they were first mortgage bonds or if there were any prior liens on the property.

He said: 'They are; they are first mortgage bonds.' That is all the conversation I had with him."

Following that conversation the plaintiff delivered to Russell, who accompanied him, a draft for the amount agreed to be paid for the bonds and the bonds were delivered to him by Russell.

There were at that time five prior mortgages on said real property aggregating $263,400. Subsequently the fourth and fifth of said prior liens were foreclosed and the property sold in said foreclosure proceeding. The property did not sell for enough to satisfy the mortgages foreclosed and deficiency judgments were entered against the improvement company aggregating $37,228.41, and the company went into bankruptcy. This action is brought to recover the plaintiff's loss from the defendant. The jury found in favor of the plaintiff, and the judgment as modified by reducing the amount of the recovery has been unanimously affirmed by the Appellate Division. Other facts appear in the opinion.

*Henry D. Hotchkiss* for appellant. It was error to admit evidence of what Robinson told plaintiff. (Angell & Ames on Corp. 288, 301; *Alexander* v. *Cauldwell,* 83 N. Y. 480; *Leary* v. *Albany Brewing Co.,* 77 App. Div. 6; *M. Life Ins. Co.* v. *Railroad Co.,* 139 N. Y. 151; *Nat. Bank* v. *Byrnes,* 84, App. Div. 100; 178 N. Y. 561; *Gause* v. *C. T. Co.,* 196 N. Y. 134; *Taylor* v. *Commercial Bank,* 174 N. Y. 181; *First Nat. Bank* v. *Tisdale,* 84 N. Y. 655; *First Nat. Bank* v. *Ocean Nat. Bank,* 60 N. Y. 278; *Ryan* v. *Bank,* 9 Daly, 308; *Tschetinian* v. *City Trust Co.,* 97 App. Div. 380.)

*S. Mack Smith* for respondent. There was no error in the admission of the evidence of the transactions of the defendant's vice-president. (*C. E. S. Co.* v. *A. T. Co.,* 161 N. Y. 605; *Strauss* v. *U. C. L. Ins. Co.,* 170 N. Y. 349; *McClure* v. *C. T. Co.,* 165 N. Y. 108;

*Hadley* v. *Clinton Co.*, 13 Ohio St. 507; *Nash* v. *M. T. & T. Co.*, 159 Mass. 437; *F. S. Bank* v. *Nat. Bank*, 80 N. Y. 162; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 49; *Benedict* v. *G. T. Co.*, 58 App. Div. 302; 180 N. Y. 558; *Booth* v. *C. M. Co.*, 74 N. Y. 15; *Oakes* v. *C. W. Co.*, 143 N. Y. 430.)

Chase, J. The question for our consideration is whether the court properly admitted the testimony of the plaintiff as to the conversation with Robinson, one of the defendant's vice-presidents. In answering that question, two other questions are involved: 1. Does it appear from the facts disclosed that the defendant had power and authority to make representations in regard to the mortgage given by the improvement company and thereby become an insurer that such mortgage was a first lien on the real property described therein ? 2. Does it appear from the facts disclosed that Robinson had authority to speak for the defendant and make it responsible for any damages occurring by reason of a false statement made by him in response to the plaintiff's question ?

The questions involved in the admission of plaintiff's conversation with Robinson are open to review in this court, notwithstanding the judgment in favor of the plaintiff has been unanimously affirmed by the Appellate Division. They are questions of law in the consideration of which it is necessary to examine the record so far as it relates to them.

The powers of a trust company are expressly defined by statute, and such powers and also the unexpressed and incidental powers possessed by a corporation were considered by this court in *Gause* v. *Commonwealth Trust Company* (196 N. Y. 134), and in that case, in speaking of the power of a trust company, the court say: "The legislature intended, and the public interests demand, that trust companies shall be confined not only within the words, but also within the spirit of the statutory pro-

22

vision which declares that a corporation shall not possess or exercise any corporate powers not given by law or not necessary to the exercise of the powers so given. Such authority does not permit a trust company to enter into speculative and uncertain schemes or, unless under peculiar circumstances not disclosed in this case, become the guarantor of the indebtedness or business of others." (p. 155.)

It is not shown that the defendant was in any way interested in the improvement company or the bonds to secure which the trust mortgage was given, or that it was to receive a commission or pecuniary advantage by the sale of the bonds. The bonds sold to the plaintiff had previously been certified and delivered to the improvement company and at the time of the sale were apparently owned by Russell who was, so far as appears, in no way connected with either party to the trust mortgage except as the owner of such bonds secured thereby.

The defendant's duties as trustee are stated in the trust mortgage and are substantially confined to the following:

1. The authentication of the bonds by a certificate thereon.

2. The delivery of the bonds to the treasurer of the improvement company upon its written order.

3. The execution of releases of lots upon payment of amounts as specified in the mortgage.

4. The registration of bonds.

5. The foreclosure of the mortgage upon default if properly indemnified.

6. The payment of prior mortgages as provided in the twentieth paragraph of said mortgage if money for such payment is paid to it by the improvement company as provided by said paragraph.

The defendant was not required by the trust mortgage, nor, so far as appears from the facts disclosed, was it authorized by statute or otherwise to make representations to prospective purchasers as to the value of the

bonds or to insure the title to the mortgaged property or the relative priority of the trust mortgage upon the improvement company's real property.

There is no presumption of law that Robinson, as a vice-president of the defendant, had authority to make false or other representations to the plaintiff in regard to the priority of the trust mortgage as a lien upon the improvement company's property. The record does not include the charter or by-laws of the defendant. No evidence was given of any action taken by the defendant through its board of directors relating in any way to the matters under consideration.

All that the record discloses of acts by Robinson in connection with the improvement company's transactions is the fact that he executed the trust mortgage on behalf of the defendant; a letter written by him to a third person purporting to be in behalf of the defendant, but for what purpose does not appear, in which he says: " We have accepted the trusteeship after securing the services of a competent real estate appraiser and it is his opinion that the property covered by the mortgage is ample security for the same; " the conversation with the plaintiff and a similar conversation with a third person in no way associated with the plaintiff.

It is quite unnecessary to consider the competency of the letter because the court found that the statement therein was not shown to be false and the conversation with the third person is not competent as will appear, among other reasons, from what we say regarding the conversation with the plaintiff. It is now claimed that Robinson had apparent authority to act in all matters relating to the improvement company and that authority for the defendant to make the representations to the plaintiff is found in the trust mortgage itself. We do not agree with such contention.

Purchasers of bonds are expressly referred therein to the mortgage for a statement of the property pledged,

the nature of the security, the rights of the holders of said bonds and the conditions upon which the bonds are secured and issued. The reference in the bonds is to the mortgage and not to the defendant as the trustee for the mortgage bondholders. The trust mortgage was delivered to the defendant and presumably was in its possession and the plaintiff as a bondholder doubtless could have asked the defendant to show him the mortgage for the purpose of ascertaining, so far as it could be ascertained from the mortgage itself, any of the facts for a statement of which the bond referred to said mortgage.

The plaintiff did not ask the defendant to see the mortgage nor did he ask for the contents of the mortgage as such. Indeed, he testified that he did not assume that the mortgage was in the defendant's possession. The question by the plaintiff was an incidental and collateral one, entirely disconnected from any duty imposed upon the defendant as a trustee under the mortage.

It must again be borne in mind that the defendant had no interest in the bonds or in the mortgage, except as such trustee, and it was in no way the agent of the mortgagor in the sale of the bonds. The recital in the trust mortgage of the prior liens was in connection with the defendant's duty in paying the same if the money therefor was subsequently paid to it as in the trust mortgage provided. No duty was imposed upon the defendant by express terms of the mortgage in regard to the proceeds of the bonds unless such proceeds were paid to it by the improvement company. Nothing by which the defendant became liable to pay the prior liens on the property has been shown. If the plaintiff had asked at the regular place of business of the defendant whether any money had been paid to it for use in paying prior liens, or if it had been asked whether the prior liens had been paid by it pursuant to the terms of the trust mortgage, and a false statement had been made in answer to such question, by reason of which the plaintiff was injured, a very dif-

ferent question would have been presented. The plaintiff did not call upon the defendant to perform a duty under the trust mortgage or attempt to ascertain whether a duty imposed upon it had been performed, but he asked a question in answering which Robinson cannot, from anything that appears, be presumed to have had authority to speak for the defendant, even if the defendant had power and authority to make such representations.

The authorities relied upon by the respondent do not sustain his position. They are each based upon facts entirely different from those shown in this case. As an illustration, in *Nash* v. *Minnesota Title Insurance and Trust Company* (159 Mass. 437), a case much relied upon by him, the representations upon which the action is brought were made in the name of the defendant by an officer fully authorized to act for it, and his authority to speak of the title in question is convincingly shown by the following quotation from the opinion: " It (the trust company) was in the business of insuring titles to real estate, and was paid for issuing policies of insurance on this title; making representations in regard to the title was so far incident to the principal undertaking for which it was paid, that it might properly make such representations to those who were about to take bonds."

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, HISCOCK and COLLIN, JJ., concur; WILLARD BARTLETT, J., dissents.

Judgment reversed, etc.