[S. F. No. 7019.   Department Two.—March 7, 1917.]

JAMES AINSA, in His Own Right and as Trustee for Other Persons Owning Bonds and Having Right to Recover by Reason of Such Ownership and With Rights to Demand of Defendant Compensation for the Deceits and Wrongs Done by and Encouraged by the Defendant, Appellant, v. MERCANTILE TRUST COMPANY OF SAN FRANCISCO (a Corporation), Respondent.

DEED OF TRUST—SECURING BOND ISSUE—LIMITATIONS ON LIABILITY OF TRUSTEE—DEFECTS IN TITLE OF MORTGAGOR—MISREPRESENTATIONS BY MORTGAGOR—CERTIFICATE OF TRUSTEE.—A trustee under the ordinary form of trust deed securing a bond issue, which provided that it "should not be liable or accountable for the acts, defaults, or neglect of any agent to be appointed in good faith for any of the purposes expressed in the mortgage," and that "no other liabil-

ity or responsibility shall under any circumstance be borne by or attach to it than for the exercise of reasonable diligence only in the performance of the trust when action on its part for that purpose shall become necessary, and that it shall not be required to take any affirmative action on behalf of the holders of said bonds unless indemnified, nor be compelled to pay any taxes which may be assessed or imposed upon" the mortgaged property, unless furnished with the money to make the payment, and that "no liability or accountability shall attach to it" for failure to foreclose the mortgage, is not liable for losses resulting to the bondholders from misrepresentations made by the mortgagor in the deed of trust respecting the ownership of the mortgaged property, or from defects in the title thereto discovered after the issuance of the bonds, merely because it attached its certificate to each of the bonds guaranteeing that the attached bond was one of a particular series issued by the mortgagor and described in the mortgage therein referred to, and that the bond and the coupons attached thereto were genuine.

ID.—LIABILITY OF TRUSTEE—ERRORS OF JUDGMENT.—Ordinarily trustees are bound to a fair exercise of their judgments and to the unselfish exercise of good faith. Very supine negligence or willful default will render them liable, but not mere errors of judgment.

ID.—OBLIGATIONS OF TRUSTEE OF EXPRESS TRUST.—The trustee of an express trust derives his power from the instrument creating the trust, and the same document furnishes the measure of his obligations.

ID.—TRUSTEE NOT AN INSURER OF TITLE—INVESTIGATION OF TITLE— CURING DEFECTS.—Under such deed of trust the trustee was under no extraordinary duty, and was not an insurer of the title of the mortgagor to the mortgaged property, nor was it bound to know the law of the country where such property was situated, or to investigate the title in the light of such law, or cure subsequently discovered defects therein.

ID.—EFFECT OF TRUSTEE'S CERTIFICATE.—The certificate of the trustee merely guaranteed the bonds and coupons as the issue of the corporation purporting to issue them; it did not operate as a guaranty of the legal sufficiency of the security.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  F. J. Murasky, Judge.

The facts are stated in the opinion of the court.

James Ainsa, *in pro. per.*, J. C. B. Hebbard, Marcel E. Cerf, C. H. Sooy, and Monte A. Dernham, for Appellant.

Morrison, Dunne & Brobeck, and R. L. McWilliams, for Respondent.

MELVIN, J.—Plaintiff appeals from the judgment on the judgment-roll alone.

James Ainsa sued in his own right and as trustee for other persons owning bonds issued by the Mexican Anthracite Coal Mining Company. The basis of plaintiff's claim is an alleged breach of trust on the part of the defendant, a trustee under a deed of trust executed by the Mexican Anthracite Coal Mining Company in support of its bonds. The face value of the bonds held by appellant according to the allegations in the complaint was seven hundred thousand dollars, and judgment for that amount with interest compounded yearly at the rate of seven per cent per annum from the first day of January, 1901, was demanded. It was the theory of the plaintiff that the conduct of the defendant as trustee, and as a corporation which had placed its certificate on the bonds of the said Mining Company, had made the Mercantile Trust Company of San Francisco responsible for and liable for the payment of the losses of the bondholders due to the causes which will be more fully discussed in this opinion.

The superior court found that the Mexican Anthracite Coal Mining Company (which we shall call the "Mexican Company") was at all times after July 25, 1901, a corporation organized under the laws of Arizona and doing business in the state of Sonora, Mexico; that the defendant was at all times mentioned in the complaint a Californian corporation doing business in San Francisco; that the "Compania Explotadora de Carboniferos en Sonora" (which we shall for brevity term the "Sonora Corporation"), was at all times indicated in the amended complaint a corporation organized and existing under and by virtue of the laws of the state of Sonora, Republic of Mexico; that Ainsa and his associates were the owners and holders of six hundred and three thousand two hundred dollars of the bonds of the Mexican Company; that on July 2, 1901, the Sonora Corporation owned and possessed certain coal mains, mines or zones, named in the amended complaint; that said title depended upon and was held by virtue of a concession and contract with the state of Sonora (which agreement is set out in the findings); and that on or about July 2, 1901, General C. P. Eagan, with the consent of the state of Sonora, entered into a contract for the purchase of the said coal lands from the Sonora Corporation. With reference to the last-mentioned transaction the court

found "that neither the contents of said contract and deed nor the facts set forth therein were known to the defendant except in so far as its terms and conditions were set forth in the deed of trust hereinafter mentioned until long after the execution of said contract." The finding contains a quotation of the contractual portion of this agreement for the purchase of the said coal lands. In substance it provided for the payment by General Eagan of twenty-five thousand dollars American gold; that the Mexican Company, for which it was specified he was making the purchase, should pay seven hundred thousand dollars in bonds on January 1, 1902; that the bonds should be guaranteed by a first mortgage on the real and personal property of General Eagan and the Mexican Company; that the bonds should be issued "with all the requirements and formalities required for their validity by the laws of the state of Sonora and the Federal Government of the United States of Mexico"; that the Mexican Company, or on its default General Eagan himself, would perform all the obligations contained in the concession to the Sonora Corporation; and that upon default of any of the stipulated payments, Eagan or the Mexican Company would forfeit all sums previously paid. On its part the Sonora Corporation guaranteed the validity of its contract with the government of Sonora.

There were also findings that under the laws of Sonora the contract between General C. P. Eagan and the Sonora Corporation was a good, valid, and absolute conveyance of that corporation's right, title, and interest in and to the coal lands; that the seven hundred thousand dollars of the bonds to be paid and delivered by General Eagan to the Sonora Corporation in consideration for said conveyance was the amount agreed upon by the parties to the contract as being equivalent to the indebtedness of the Sonora Corporation to its creditors and those having claims upon the said coal lands including plaintiff, James Ainsa, and those represented by him; that on September 13, 1901, General Eagan deeded said coal lands to the Mexican Company, but that his wife did not join in the conveyance; that the deed was not stamped nor recorded as required by Mexican law; but that these defects in the execution and authentication of the deed were not known to defendant when a certain deed of trust was executed and a certificate was attached by defendant to the bonds issued by the Mexican Company. Then follow findings regarding the making, execution,

and delivery to the defendant by the Mexican Company on November 12, 1901, of a trust deed in and to the coal lands described in the conveyance by the Sonora Corporation to General Eagan and in the deed by him to the Mexican Company; and it is specifically found that the only representations ever made by the defendant with reference to said coal lands were contained in this trust deed, in the bonds issued by the Mexican Company and secured by said trust deed, and in the coupons attached to said bonds. The deed of trust is set out at length in the findings, as are a copy of one of the bonds and a copy of the trustee's certificate. This certificate is in the following words and figures:

"This is to certify that the within bond is one of a series of nineteen hundred (1900) bonds issued by the Mexican Anthracite Coal Mining Company, and described in the mortgage therein referred to, and that said bond and the coupons attached thereto are genuine.

"MERCANTILE TRUST COMPANY OF SAN FRANCISCO,
"Trustee.
"By FRED'K W. ZEILE,
"President."

The findings recite the delivery to the Sonora Corporation and to the plaintiff and other creditors of seven hundred thousand dollars in bonds in accordance with the agreement among the various parties to the transaction; and that defendant's representations were made with the purpose of inducing the creditors to accept the bonds.

In the thirteenth paragraph of the amended complaint it had been alleged that after the sale of the bonds, the Mercantile Trust Company of San Francisco, desiring to cheat the purchasers of said bonds, united with the Mexican Company and abandoned all work on the coal mains, mines, and zones and destroyed all mortgaged estate of every kind; that defendant refused to demand of said mortgagor other estate in lieu of that destroyed by the abandonment of all work; that defendant declined to provide money to protect the mortgaged estate; that it also refused as trustee to have cured the defect in title arising from the infirmities in the deed from Eagan; and that defendant assented to the abandonment by the Mexican Company of work on the coal mains and zones. The court found against all of these allegations and found also that no demand was ever made upon defendant to do any of

the things which plaintiff alleged in the said thirteenth paragraph of the amended complaint that defendant refused to do. There was also a finding negativing an allegation that defendant had acted in collusion with its legal advisers in purposely having the bonds so drawn as to be of no value. It was also found by the court that the Mexican Company abandoned entirely all control and possession of the coal lands in February, 1903, and that said lands, according to the contract between the Republic of Mexico and the other parties thereto, reverted to said Republic. There were specific findings in which certain of the statutes of Mexico were fully set forth.

Appellant's principal contentions are that respondent, as trustee under the ordinary form of trust deed, is liable for the representations made by the mortgagor, and that having attached its certificate to the bonds the said trustee became liable to the bondholders for the defects in the mortgagor's title discovered after the issuance of the bonds.

The deed of trust contained a representation by the Mexican Company that it was the owner of the property to be mortgaged; that the payment of the bonds was secured by a mortgage on the coal lands described; that the lands were mortgaged to respondent as trustee; and that said trustee should hold the property to secure the payment of the bonds. These representations were made by the Mexican Company and *not* by the respondent. The trustee's certificate heretofore quoted, merely guaranteed that the attached bond was one of a series of one thousand nine hundred "described in the mortgage therein referred to," and that the bond and coupons were genuine. In that part of the deed whereby the respondent accepted the trust on behalf of the holders of the bonds it was expressly provided that the Mercantile Trust Company of San Francisco should not be liable or accountable for the acts, defaults, or neglect of any agent to be appointed in good faith for any of the purposes expressed in the mortgage, and the instrument also contained the following language referring to the trustee: "That no other liability or responsibility shall under any circumstances be borne by or attach to it than for the exercise of reasonable diligence only in the performance of the trust when action on its part for that purpose shall become necessary, and that it shall not be required to take any affirmative action on behalf of the holders of said bonds unless indemnified, nor be compelled

to pay any taxes which may be assessed or imposed upon any of the property herein described, unless the moneys necessary to pay such taxes shall be furnished by the Mexican Anthracite Coal Mining Company or the holders of said bonds, and further that no liability or accountability shall attach to it, if it shall fail to proceed to foreclose this mortgage, but in that case a new trustee shall be appointed as hereinabove provided.''

It is very evident that by becoming a trustee under such a deed, and by issuing such a certificate, the respondent did not assume any of the obligations which appellant seeks to place upon it. Ordinarily trustees are bound to a fair exercise of their judgments and to the unselfish exercise of good faith. ''Very supine negligence or willful default will render them liable,'' but not mere errors of judgment. (*Ellig* v. *Naglee*, 9 Cal. 683–695; *Estate of Cousins*, 111 Cal. 441–449, [44 Pac. 182]; *Estate of Schandoney*, 133 Cal. 387–393, [65 Pac. 877].) The trustee of an express trust derives his power from the instrument creating that trust, and the same document furnishes the measure of his obligations. (Pomeroy's Equity Jurisprudence, 3d ed., sec. 1062; 39 Cyc. 290–294.) Applying the measure of these rules we find that the trustee was under no extraordinary duty. It was not an insurer of the title of the Mexican Company to the coal lands, nor was it bound to know the law of Mexico and to investigate the title in the light of the statutes of that republic. A trustee under a deed of trust does not assume the important obligations which are in some instances cast upon a trustee by operation of law. An ordinary trust deed is little more than a mortgage with power to convey. (*Sacramento Bank* v. *Alcorn*, 121 Cal. 379–383, [53 Pac. 813]; *Curtin* v. *Krohn*, 4 Cal. App. 131–135, [87 Pac. 343]; *Hollywood Lumber Co.* v. *Love*, 155 Cal. 270–273, [100 Pac. 698]; *MacLeod* v. *Moran*, 153 Cal. 97–99, [94 Pac. 604]; *Tyler* v. *Currier*, 147 Cal. 31–36, [81 Pac. 319]; *Weber* v. *McCleverty*, 149 Cal. 316–321, [86 Pac. 706].) A trustee under an ordinary deed of trust is the common agent of both parties and is required to act impartially. (Cook on Corporations, 7th ed., p. 3050; Jones on Mortgages, 6th ed., sec. 1771.) Some authorities hold that he is not a trustee at all in a technical sense. (28 Am. & Eng. Ency. of Law, 2d ed., p. 765.)

Appellant cites authorities to the effect that a trustee owes a duty to the bondholder of preservation and protection of the security. This is undoubtedly true if the means of defense are known to the trustee or may with diligence be discovered. (*Cuthbert* v. *Chauvet,* 136 N. Y. 326–332, [18 L. R. A. 745, 32 N. E. 1088].) But in the present case the court found that the trustee was not cognizant of the infirmities in the conveyance from General Eagan, and there is nothing in the terms of the trust itself which imposes upon the trustee the duty of correcting defects of this sort. Obviously the defendant could not compel the Mexican Company to perform the stipulated work on the coal lands, and it is equally clear that if the title of the latter corporation to the land was void by reason of the defects in the conveyance from General Eagan, the doing of such work would not have operated as a protection to the security. We may therefore dismiss from consideration the asserted neglect of the trustee in failing to compel performance of mining operations on the property in Mexico, and determine whether or not respondent was bound to know the law of Mexico and to protect the bondholders by having the title of the Mexican Company made perfect. Even if we assume that in the ultimate execution of its duties the trustee might have been compelled to have resort to the laws of Mexico, this assumption does not charge it with knowledge of the Mexican law relating to conveyances. In the mortgage or deed of trust, the Mexican Company, and not the trustee, stated that the former was owner of the "eleven carboniferous zones"; that the Mexican Company was about to issue bonds; and that said bonds should be secured by a first mortgage on the Mexican Company's property. After these representations were made by the Mexican Company, then the trustee consented to act but protected itself by certain conditions expressed in the instrument, among which was a provision that no liability should attach to the said Mercantile Trust Company of San Francisco except "for the exercise of reasonable diligence only in performance of the trust when action on its part for that purpose" should become necessary. It is evident that respondent thus expressly protected itself from liability for the representations of the mortgagor.

Examining the certificate to the bonds we find that it merely *certifies* that each bond to which it is attached is one of a

series of one thousand nine hundred bonds and that the coupons are "genuine." The word "certify" is well understood. It means "to testify in writing; to give a certificate; or to make a declaration about a writing." (New Standard Dictionary.) The word "genuine" means "not spurious, counterfeit, or false." (Webster's Dictionary.) As was said in *Moore* v. *Copp*, 119 Cal. 432, [51 Pac. 630] : "By genuineness is meant nothing more than that it is not spurious, counterfeit, or of different import on its face from the one executed, but is the identical instrument executed by the party." The certificate merely guaranteed the bonds and coupons as the issue of the corporation purporting to execute them. To hold that the word "genuine" involyed the legal sufficiency of the security would be to stretch the definition of the word beyond the limits of any interpretation of its meaning heretofore given. The purpose of the certification was not to insure the sufficiency of the security. It was to prevent an overissue. (*Patterson* v. *Guardian Trust Co.*, 67 Misc. Rep. 614, [122 N. Y. Supp. 773].) The rule on this subject is well stated by Mr. Jones as follows:

"The limited and guarded terms of a trustee's certificate cannot be lawfully held to embrace a representation or guaranty of the truthfulness of the description of the obligation as made by the obligor. Trustees act for a comparatively trifling consideration, limiting their liability to their own acts of negligence and misconduct, and it would be unfair to put so serious a burden as a guaranty upon them. So far as appears, there is not a single adjudication extending their liability to even an implied guaranty of the securities whose mere identity they have authenticated." (Jones on Corporate Bonds and Mortgages, 3d ed., sec. 287a.) This declaration of the law is supported by *Tschetinian* v. *City Trust Co.*, 186 N. Y. 432, [79 N. E. 401], *Bauernschmidt* v. *Maryland Trust Co.*, 89 Md. 507, [43 Atl. 790], and *Davidge* v. *Guardian Trust Co.*, 203 N. Y. 331, [96 N. E. 751].

Appellant contends that the provision in the deed of trust purporting to limit respondent's liability is ineffectual and void. In support of this contention *Mullen* v. *Eastern Trust and Banking Co.*, 108 Me. 498, [81 Atl. 948], is cited, but the citation does not sustain the position which appellant takes. That was a case in which a false certificate was made to support an overissue of bonds. The trustee sought to avoid lia-

bility under the language of the trust deed exempting it from responsibility for the acts or omissions of its agents. The supreme court of Maine held that this provision was not intended to refer to the act of the trustee in authenticating the bonds, but to its duties, powers, and immunities after it should have taken possession of the trust property. That case is in harmony with the other authorities cited above because, in the opinion, the purpose of a certificate on a bond is declared to be ''to guarantee not the value or sufficiency of the property behind the bond, but the validity of the bond itself as a legal instrument and the fact that it is secured by a trust mortgage.''

No other alleged errors merit analysis.

It follows from the foregoing discussion that no material error was committed by the superior court. The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.