[Civ. No. 15754. First Dist., Div. Two. Apr. 27, 1954.]

C. A. SOHN, Appellant, v. CALIFORNIA PACIFIC TITLE
INSURANCE COMPANY (a Corporation) et al., Re-
spondents.

Henry J. Kleefisch and Reed M. Clarke for Appellant.

Landels & Weigel, Knight, Boland & Riordan and Harold L. Levin for Respondents.

GIBSON (Lilburn), J. pro tem.*—This action arose out of a dispute as to the proper disposition of the proceeds of a

*Assigned by Chairman of Judicial Council.

sale of real property following the exercise of a power of sale by a trustee under a deed of trust.

The following facts appear to be fully established by the evidence:

On August 29, 1947, Charles Tesseyman was the owner of certain real property located in Stockton, San Joaquin County, California, known as the Hotel Wolf, and on that date he borrowed $150,000 from the American National Insurance Company, hereinafter referred to as Beneficiary, and executed and delivered to it his promissory note in that amount. Contemporaneously, Tesseyman executed and delivered to Beneficiary, as security for the payment of the promissory note, his deed of trust in which he is named as trustor, the California Pacific Title Insurance Company, hereinafter referred to as Title Company, is named as trustee, and the insurance company aforesaid is named as Beneficiary, which covered and described the Hotel Wolf property. On April 13, 1950, Mr. Tesseyman was in default in the payment of installments of principal and interest under the promissory note amounting to $12,163.50, and on that date Beneficiary caused to be filed a notice of default, in the office of the county recorder of the county of San Joaquin pursuant to the provisions of Civil Code, section 2924. On October 18, 1950, exercising the power of sale conferred by the deed of trust, Title Company sold the Hotel Wolf property and received payment of $161,000 therefor. On that day, there was due to the Beneficiary under the terms of the promissory note and deed of trust the aggregate sum of $141,626.69, subject to an adjustment on the premium of a fire insurance policy hereafter to be mentioned. On October 26, 1950, this amount was paid by the Title Company to the Beneficiary, leaving a balance of $19,373.31 of the proceeds of the sale in the hands of the Title Company.

On June 15, 1950, several months prior to the sale, Mr. Tesseyman had executed a second deed of trust covering the Hotel Wolf property, in which Arthur Berberian, John Borasi, and William Dal Porto (hereinafter designated as the Berberian creditors) as trustees for creditors of Charles Tesseyman, are named as beneficiaries. This second deed of trust was given to secure, among other things, the payment of a promissory note for $50,000 executed by Tesseyman in favor of the Berberian creditors, and was duly recorded on June 16, 1950. On October 18, 1950, the day on which the Hotel Wolf property was sold by Title Company under the first deed of trust,

an action was filed by the Berberian creditors in San Joaquin County to recover the indebtedness evidenced by their said note. This action sought the recovery of $36,487.18, with interest.

Immediately following the sale under the first deed of trust, and on the same day of the receipt by Title Company of the $161,000 paid by the purchaser, a writ of attachment in the said Berberian action was served upon Title Company, which attached and garnished all of the right, title and interest of Charles Tesseyman in and to the proceeds of sale then in the hands of Title Company. On October 20, 1950, a stipulation was entered into and signed by the attorneys for plaintiff and Tesseyman and his attorneys, which, so far as applicable here, reads as follows:

"It is hereby stipulated and agreed by and between plaintiffs and defendants in the above entitled and numbered action, by their respective attorneys, that plaintiff shall . . . recover from . . . defendant Charles Tesseyman, judgment for . . . $36,487.18 . . . plus . . . costs and disbursements. No . . . writ of execution shall be issued except for the sole . . . purpose of levying upon and selling . . . all personal property and chattels exclusive of any monies, excepting monies which are presently under attachment and in the hands of the California Pacific Title Insurance Co., or its agents, belonging to . . . defendant and which have been levied upon . . . and . . . now are in the custody and possession of, the Sheriff of the County of San Joaquin . . . under . . . a writ of attachment issued out of this court in said action and said judgment, and any assignment . . . of said judgment or of any interest therein shall be subject to this provision and restriction, the plaintiffs hereby expressly waiving their right to any other . . . writ of execution based upon said judgment, and said judgment shall be fully satisfied . . . out of the personal property and chattels hereinbefore mentioned . . . belonging to the defendant, and by any sale thereof under execution irrespective of the amount for which said personal property and chattels may be bid in for or purchased at said sale . . ."

Pursuant to such stipulation, on November 6, 1950, a judgment was entered in the Berberian action against Tesseyman for $37,171.68. On the same day, a writ of execution was issued in that action which was levied upon the furniture and equipment in the Hotel Wolf and the proceeds of the sale of the

realty in the hands of Title Company. In response to this levy, on November 20, 1950, Title Company paid the sheriff of the county of San Joaquin, out of the proceeds of the sale then in its hands, the sum of $10,100, leaving a balance of the proceeds in its possession in the amount of $9,273.31. It should also here be said that the sheriff sold the personal property in the hotel, at a sale under said writ of execution, for $10,000, which was paid or credited to the Berberian creditors.

The Berberian judgment was subsequently, for a valuable consideration, on the 16th day of November, 1950, assigned to the Casa Hamilton Corporation, the interpleaded cross-defendant here, and the latter has ever since been and now is the owner thereof.

On October 26, 1950, this action was commenced by C. A. Sohn, as the assignee of Tesseyman, alleging an indebtedness of Title Company to Tesseyman in the sum of $148,836.14. Sometime thereafter Casa Hamilton Corporation was brought in as a necessary party and the issues were joined in the pleadings thus before the court.

At the trial, the court determined that the payment of $141,-626.69 by Title Company to the Beneficiary was proper; as was the payment by Title Company of the sum of $10,100 to the sheriff of the county of San Joaquin, that there then remained in the hands of Title Company a balance of $9,273.31 which was, by the court, awarded as follows:

To Title Company, as the reasonable fee for services rendered by it in said sale, the sum of $1,461, together with the sum of $223.04, its costs and expenses; to Knight, Boland & Riordan, attorneys at law, $4,500 as their fee, together with $146.99 their costs; to Landels & Weigel, attorneys for Title Company, the sum of $1,000 as their fee; and to Casa Hamilton Corporation the balance of the proceeds of sale under its assigned judgment, after payment of the foregoing, in the sum of $1,942.28, less legal costs incurred in the action; and the costs herein of Title Company. Judgment was entered accordingly. All parties except Tesseyman seemed to be satisfied with said judgment, since he is the only one who has appealed. We are satisfied his appeal is without merit.

The court further found that while the nominal plaintiff and appellant is C. A. Sohn, Tesseyman's assignment to her of his interest in the proceeds of the sale was for collection only. This finding is fully substantiated, and since the name of Sohn does not appear in any of the proceedings leading to the commencement of this action, and since Tesseyman's name

does frequently appear, in the interest of clarity only, we shall hereafter refer to Tesseyman as being the appellant.

Appellant complains first that Title Company improperly paid the $141,626.69 to the Beneficiary under the first deed of trust. He contends that said sum was not due at that time and that the sum of $12,163.50, the aggregate amount of unpaid installments, was the total amount then due. He admits Beneficiary had the right to require the immediate payment of the whole sum of principal and interest upon such a default, and that proper statutory notice of default had been given, but he insists that the Beneficiary did not exercise its option to accelerate the payment of the entire amount then unpaid. ■ He argues that the word "obligation" and the phrase "nature of the breach" as used in section 2924, Civil Code, are synonymous; that unless the notice of default specifically states the contrary, a declaration that the "nature of the breach" is a failure to pay certain installments, is equivalent to a statement that the "obligation" to be satisfied by the sale is the amount of the unpaid installments, and that, therefore, in the instant case, by filing a notice of default in the form required by the statute, the Beneficiary declared only the sum of $12,163.50 to be due.

We are persuaded such interpretation of the statute is untenable. The cases cited by appellant do not sustain it. Indeed, the cases of *Birkhofer* v. *Krumm*, 27 Cal.App.2d 513, [81 P.2d 609], and *Williams* v. *Koenig*, 219 Cal. 656, 659-660 [28 P.2d 351] so cited, hold to the contrary. The notice here given stated: ". . . hereby gives notice that a *breach of the obligation* for which such transfer in trust is security, has occurred, the nature of such breach being the failure to pay monthly installments of principal and interest in the amount of $1,351.50 each month, maturing August 1, 1949, and thereafter, to date hereof, and that the Beneficiary elects to sell, or cause to be sold, the trust property *to satisfy said obligation.*" (Emphasis added.)

It is thus seen the notice sets forth "the nature of the breach," and declares the trust property will be sold to satisfy "the obligation for which the transfer in trust is security," as the statute requires. The *breach* is the failure to meet monthly payments; the *obligation* is the duty to repay the sum loaned, plus interest. ■ The finding of the court that the Beneficiary duly declared the entire principal and interest to be immediately due and payable is supported by the evidence, and we are bound thereby. (*Consolidated Lbr.*

*Co.* v. *Fidelity etc. Co.,* 161 Cal. 397, 400 [119 P. 506].) Furthermore, there can be no doubt that Tesseyman knew the Beneficiary had declared the entire amount of the indebtedness due and payable. He was so informed by the attorney for the Beneficiary on March 20, 1950.

Appellant also asserts there is no evidence to support the finding that the sum of $141,626.69 was due the Beneficiary at the time of the sale. In this he is in error. William H. Smith, secretary of the Title Company, testified that was the amount due.

The claim is also advanced that the court erroneously directed some of the surplus proceeds to be applied to the payment of the fees and costs and attorneys' fees in connection with the sale of the property in this litigation for the reason, so it is claimed, the evidence is insufficient to show that they were paid. They were, however, found to be reasonable in amount, and were found to have been incurred. That is all that is necessary, and we cannot say the evidence compels a contrary conclusion. (*T. L. Reed Co.* v. *Kruse,* 220 Cal. 181, 183 [29 P.2d 856] ; *Mitau* v. *Roddan,* 149 Cal. 1, 16 [84 P. 145, 6 L.R.A.N.S. 275].)

Appellant next contends that Title Company had no authority to pay the sum of $10,100 of the surplus proceeds to the sheriff of San Joaquin County. As we have seen, however, on November 6, 1950, the same day the execution was issued, there was filed in the Berberian action the stipulation for judgment above referred to. This stipulation provided substantially that a judgment should be entered therein for $36,487.18, plus costs, and the same might be satisfied out of personal property and chattels in the hotel and "monies which are presently under attachment in the hands of the California Pacific Title Insurance Co. or its agents." This stipulation was personally signed by Mr. Tesseyman. In conformity thereto the court entered judgment, providing among other things that "this judgment shall be satisfied out of . . . monies belonging to the said defendant and heretofore levied upon under and by virtue of the writ of attachment hereinbefore referred to, in the possession or control of California Pacific Title Insurance Company . . ." The execution was issued on this judgment. There was no attack made upon the judgment in any way and no objection was made to its correctness until long after the $10,100 was paid to the sheriff. This stipulation of Tesseyman that the judgment might be satisfied out of the monies held by the Title Com-

pany and sale of personal property was acted upon by the court in entering judgment, was acted upon by the sheriff in making his levy and disbursing the funds thereunder, and was acted upon by Title Company in paying the monies to the sheriff. We thus see that Tesseyman's agreement became an executed contract, and he is bound thereby. (Civ. Code, § 3515; *Cathcart* v. *Gregory,* 45 Cal.App.2d 179, 186-188 [113 P.2d 894].)

█ The contention is then made that the writ of attachment in the Berberian action was not properly served. However, the record shows that service of the writ, addressed to Title Company, was made upon an officer of that company, at his office, at a time when such officer had control of the money. This was a sufficient service. (Code Civ. Proc., § 542, subd. 6.)

In addition to this, it is noted the said stipulation refers to "monies which are presently under attachment, etc." And in any event, plaintiffs specifically agreed at the trial that the *execution* was served on the trustee; and that was the writ under which the $10,100 was paid to the sheriff.

█ Another assertion of the appellant is that the Berberian judgment was fully satisfied before the levy of the execution on Title Company. This is on the theory that the judgment was required to be satisfied out of the hotel personal property exclusive of monies, that such property was sold on November 16, 1950, for $10,000 and that the application of this amount on the judgment discharged it. However, in taking this position, he entirely overlooks the portion of the stipulation written in ink therein after it had been typewritten, which provides that the money then in the hands of Title Company, etc. belonging to Tesseyman should also be subject to the writ of execution. We think it clear, the intention of the parties to the stipulation was, the Berberian judgment was to be satisfied, if at all, solely out of the proceeds from the sale of the hotel furnishings *and* the surplus money in the hands of the trustee to which Tesseyman was entitled, and that both sources of funds were to be available for application thereon.

█ We now come to a consideration of appellant's argument that the United States of America, also one of Tesseyman's creditors, should have been paid this $10,100, instead of the sheriff of San Joaquin County. But Tesseyman had *especially agreed*, as we have already seen in his stipulation,

that the Berberian creditors were to be paid out of proceeds from sale of personalty and these proceeds, and they were precluded from seeking satisfaction of their judgment out of any other assets.

■ Having reaped the benefit of his stipulation, we are satisfied he is in no position to take a contrary stand at this time. He may have well concluded, upon reflection, that he would have been better off if he had had this money applied on his delinquent income taxes, but he has already agreed otherwise, and said agreement has been executed. ■ The Title Company was under no legal obligation to pay the United States Government its claim; it was merely the agent of Tesseyman and the Beneficiary. (*Ainsa* v. *Mercantile Trust Co.*, 174 Cal. 504, 510 [163 P. 898] ; *Pacific S. & L. Co.* v. *North American etc. Co.*, 37 Cal.App.2d 307, 310 [99 P.2d 355].)

■ The Title Company was bound to follow the provisions of the contract (stipulation), the deed of trust, and rules of law applicable thereto. (*Conlin* v. *Coyne*, 19 Cal. App.2d 78, 85 [64 P.2d 1123] ; *Scott* v. *Security Title Ins. & Guar. Co.*, 9 Cal.2d 606, 611 [72 P.2d 143, 117 A.L.R. 1049].)

■ There is nothing in the deed of trust, agreement, or any rule of law with which we are familiar, and appellant has pointed to none, which required the title company to pay these delinquent taxes. The provision in the deed of trust which directs the Title Company to pay this surplus ''to the person or persons legally entitled thereto'' can give him no aid or comfort even in the absence of the stipulation aforesaid. ■ There was here a junior encumbrance, which was eliminated by the exercise of the power of sale, consequently the junior lien attached to the surplus proceeds so that the Berberian creditors (the sheriff with his writ of attachment) became the ''persons legally entitled thereto'' as provided in said deed of trust. (18 Cal.Jur. 638, 639, 641; *Markey* v. *Langley*, 92 U.S. 142, 152 [23 L.Ed. 701, 705].)

■ However, the equitable principle which transfers the creditors' claim from the foreclosed property to the sale proceeds does not apply where the creditors' lien on the property is unaffected by the sale, and in such case the creditors' right to look to the real estate for security continues. (3 Jones on Mortgages, § 2483.) ■ And a federal tax lien upon real property is not eliminated by a sale pursuant to the exercise of a power of sale under a prior deed of trust. (*Bank of America* v. *United States*, 84 F.Supp. 387; *Metropolitan Life Ins. Co.* v. *United States*, 107 F.2d 311.)

█ Of course, the Berberian creditors, who had a lien on the real property under their second deed of trust lost this lien on such real property as a result of the sale. (*Cook* v. *Huntley*, 44 Cal.App.2d 635 [112 P.2d 889].)

█ We see, therefore, the duty of Title Company was to pay from this surplus the Berberian creditors whose lien had been eliminated from the realty, and not the government, whose lien on the property continued. This it did, thus performing its legal obligation in this respect, *and acting strictly in accordance with Tesseyman's agreement*. In addition to the foregoing, the evidence shows that Casa Hamilton Corporation has subsequently obtained from the United States government releases of·this tax lien on both the real and personal property here involved, by paying the government the aggregate sum of $5,050.

We now pick up the point urged by appellant, that this $1,942.28 should not have been awarded to Casa Hamilton Corporation, but should have been ordered to be paid to him. We can find no justification for the contention. The property was sold for $161,000. There was paid to the Beneficiary $141,626.69, which left a balance of $19,373.31 in the trustee's hands. There was paid out on execution the sum of $10,100, and awarded to the Title Company's fees and expenses $1,684.04, to Knight, Boland & Riordan, attorneys' fees, $4,646.99, to Landels & Wiegel, attorneys, $1,000, making a total for fees and expenses, the sum of $7,331.03, which, added to the $10,100, equals $17,431.03. Subtracting this sum from the $19,373.31, we have a balance of $1,942.28 left with the trustee for final distribution. In order to determine to whom this should be paid, let us now go back and see what the status of the Berberian judgment is.

It was originally entered in the sum of $37,171.68. There was paid thereon $10,000, plus $10,100, or $20,100, which leaves an unsatisfied balance of $17,071.68. The $1,942.28 is a part of the surplus funds levied on by the sheriff, and since the unsatisfied portion of the judgment exceeds this sum, and Casa Hamilton Corporation is the owner of the judgment, it is entitled to this balance.

█ Since some attack seems to be made upon the San Joaquin judgment, we perhaps should here say that that judgment is the one Tesseyman consented to, has long ago become final, and may not here be collaterally attacked. (*Nielsen* v. *Emerson*, 119 Cal.App. 214, 217-218 [6 P.2d 281]; *Palace Hotel Co.* v. *Crist*, 6 Cal.App.2d 690, 694 [45 P.2d 415].)

In the sum of $141,626.69 claimed to be due to Beneficiary there was included the sum of $1,964.80 paid out as a premium on fire insurance. Appellant contends that this is an overcharge and with this we agree. At the time of the sale of this realty to Casa Hamilton the policy had a cash surrender value of $1,735.02. This policy was turned over to the purchaser, who later cancelled it and received the return premium. Obviously, the purchaser ordinarily would not be entitled to the gift of this $1,735.02. However, under the circumstances, it makes no difference here, since if the policy had been cancelled and this sum had remained in the hands of the trustee it would have been a part of the surplus from the sale of the realty, and since the unsatisfied judgment of Casa Hamilton, formerly the Berberian judgment, is much more than this sum, Casa Hamilton would be entitled to receive it anyway under the execution and did receive it.

Finally, appellant complains that the findings do not dispose of the issues raised by the various pleadings. While the latter are somewhat voluminous, we think the material issues were found upon, and sustain the judgment. Regarding the court's claimed failure to specifically find in regard to the United States government being entitled or not entitled to some of this money in satisfaction of Tessyman's tax bill, we think the findings so adequately dispose of the matter, and a more specific finding thereon would have had to be adverse to him. Therefore, he may not complain. (*Elliott v. Bertsch,* 59 Cal.App.2d 543, 548 [139 P.2d 332] ; *Vaughan v. Roberts,* 45 Cal.App.2d 246, 248, 258 [113 P.2d 884] ; *Dunn v. Stringer,* 41 Cal.App.2d 638, 646 [107 P.2d 411].)

We think the foregoing sufficiently disposes of the appeal. Appellant has written exhaustive briefs, which we have carefully read and considered. We find we are unable to uphold appellant's contentions sufficiently to reverse the judgment, and it is, therefore, affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied May 27, 1954, and appellant's petition for a hearing by the Supreme Court was denied June 23, 1954.