[Civ. No. 9477. Fourth Dist., Div. Two. Sept. 23, 1970.]

ARCHIE G. STRUTT, Plaintiff and Appellant, v.
ONTARIO SAVINGS AND LOAN ASSOCIATION et al., Defendants
and Respondents.

548

## COUNSEL

Robert W. Battin for Plaintiff and Appellant.

Rutan & Tucker, Garvin F. Shallenberger and J. Nicholas Counter III for Defendants and Respondents.

## OPINION

KAUFMAN, J.—By this action, plaintiff sought quiet title to real property and damages, both compensatory and exemplary, against defendants Ontario Savings and Loan Association (hereinafter Ontario Savings), Ontario Title Service Company, Inc. (hereinafter Ontario Title), and James Iler. The issues revolve around the validity of a trustee's sale to Ontario Savings and a subsequent sale by that defendant to defendant Iler. The court below granted Iler's motion for summary judgment and dismissed plaintiff's first amended complaint with prejudice as to Iler. (Code Civ. Proc., § 437c.)[1]

### The Facts

In April 1965, plaintiff purchased the apartment property for a total consideration of approximately $36,000, including the assumption of an existing promissory note and deed of trust in favor of Ontario Savings as beneficiary and Ontario Title as trustee.

---

[1]So far as appears from the record, the action is proceeding as against Ontario Savings and Ontario Title.

On December 15, 1966, plaintiff defaulted in making the payments due under the promissory note and deed of trust, and made no payments thereafter. The unpaid principal balance was $23,115.41.

In accordance with Civil Code, section 2924 and the terms of the deed of trust, on February 9, 1967, a notice of default was recorded and thereafter notice of sale was posted and published, and, on June 1, 1967, pursuant thereto, the property was sold by the trustee to Ontario Savings for $23,443.40.

Subsequently, by grant deed dated July 3, 1967, and recorded September 1, 1967, Ontario Savings sold the property to James Iler for $32,500. Iler purchased the property from Ontario Savings through a real estate broker, Mr. Charles Street. Neither Mr. Street nor Mr. Iler had any legal relationship to Ontario Savings or Ontario Title except as broker and purchaser, respectively, in this transaction.[2] Neither Mr. Street nor defendant Iler had ever heard of plaintiff nor had either of them any actual knowledge of his alleged disabilities.

By his first amended complaint, plaintiff alleged that, on or about December 3, 1966, he became "legally insane"; that on or about March 7, 1967, "plaintiff was falsely . . . and wrongfully arrested, incarcerated in jail, and subsequently adjudicated insane and thereafter committed to Atascadero State Mental Hospital, continuously, and uninterruptedly, until . . . about June 30, 1967."

Plaintiff asserts that, before rendering summary judgment in favor of defendant Iler, the trial judge took judicial notice of Orange County Superior Court file No. C-17797 entitled People v. Archie G. Strutt. Some facts and dates pertinent to plaintiff's arrest, incarceration, "insanity adjudication," and his commitment to and release from Atascadero State Hospital appear in said file and are referred to by the parties in their briefs. Although that file was not made a part of the record, we have, accordingly, taken judicial notice of the file and its contents in accordance with section 459, subdivision (a)(1) of the Evidence Code.

Plaintiff's arrest on March 7, 1967, appears to have been for an alleged felony bad check charge (Pen. Code, § 476a). On March 24, 1967, criminal proceedings were suspended and proceedings instituted under Penal Code, section 1368 to determine his "ability to understand the nature and purpose of the proceedings taken against him and to assist counsel in the conduct of

---

[2]In his first amended complaint, plaintiff alleged that each of the defendants was an agent of each of the other defendants, but plaintiff filed no counterdeclaration to contradict the declarations of Iler and Street, both of which set forth facts establishing the absence of any such agency.

his defense in a rational manner." On April 20, 1967, the court made an order committing plaintiff to Atascadero State Hospital "for care and treatment until such time as the superintendent shall certify that [he] can assist counsel in his defense." In the order it is recited that "the defendant is adjudged and decreed presently unable to assist counsel in his defense." The word "insane," which appears to be a part of the duplicated form, was specifically stricken out and the words "unable to assist counsel in his defense" substituted therefor. Under date of June 15, 1967, the superintendent of Atascadero State Hospital executed a "Certification Of Sanity," in which it is stated that Mr. Strutt "is now able to understand the nature of the charges against him and can cooperate rationally with his attorney in his defense. In accordance with Section 1372 of the Penal Code, I hereby certify that said defendant is now sane." On June 30, 1967, in the Orange County Superior Court the section 1368 proceedings were terminated and criminal proceedings were reinstituted. The case was remanded to the Municipal Court of the Newport Judicial District for further proceedings and plaintiff was released on his own recognizance.[3]

Plaintiff alleged that defendants Ontario Savings and Ontario Title had both constructive and actual knowledge of plaintiff's alleged legal disabilities, but nevertheless, collected all rentals from the apartment property, refused to apply the monies thus collected toward the payment of the sums due under the promissory note and deed of trust and proceeded with the foreclosure proceedings, the trustee's sale and the sale to Iler. It is also alleged that plaintiff had no notice of the trustee's sale and that no guardian was appointed to protect plaintiff's interest in said sale.

### Contentions

Plaintiff's theory is apparently that, because Ontario Savings and Ontario Title had both constructive and actual knowledge of plaintiff's alleged legal disabilities, the trustee's sale on June 1, 1967, was invalid and that the subsequent sale by Ontario Savings to defendant Iler conveyed no title. In this connection plaintiff contends that the procedure outlined in Civil Code, section 2924 permitting foreclosure without actual notice to the record owner constitutes an unconstitutional deprivation of property without due process of law. Plaintiff further contends that Iler was charged with constructive notice of plaintiff's "adjudication of insanity" on April 20, 1967, in the Orange County Superior Court proceedings pursuant to Penal Code, section 1368.

Defendant Iler contends that, even if Ontario Savings or Ontario Title, or

---

[3]In his opening brief, plaintiff states that the criminal charge against him was dismissed on October 25, 1967 "in the interests of justice."

both of them, practiced some fraud or imposition upon plaintiff, Iler is a bona fide purchaser for value without notice of the fraud or imposition and that, as such, he obtained valid title to the property notwithstanding that the trustee's sale might have been voidable as between plaintiff and defendants Ontario Savings and Ontario Title. He urges that the adjudication under Penal Code, section 1368 is not really an adjudication of incompetency and that, in any event, he was not chargeable with notice thereof.

We need not and do not determine the rights and liabilities between plaintiff and defendants Ontario Savings and Ontario Title, nor do we believe it necessary for purposes of the current decision to determine whether the order in the proceedings pursuant to Penal Code, section 1368 constituted an adjudication of plaintiff's incompetency. We have concluded that defendant Iler was not chargeable with notice of plaintiff's alleged legal disability; that Iler was a bona fide purchaser for value without notice of any fraud or imposition that might have been practiced by Ontario Savings or Ontario Title and that, as such, the sale to him is not subject to avoidance by plaintiff.

### The Trustee's Sale

■ Contrary to plaintiff's position, his alleged supervening insanity would not deprive the trustee of the power to convey title to the property in a trustee's sale in accordance with Civil Code, section 2924 and the terms of the deed of trust. (Civ. Code, §§ 2356 and 1216; cf. *More* v. *Calkins,* 95 Cal. 435, 437-438 [30 P. 583] [supervening death]; see California Land Security and Development (Cont. Ed. Bar 1960) § 12.38, p. 302.)

Plaintiff apparently places some reliance on section 40 of the Civil Code which provides: "[A]fter his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right, until his restoration to capacity." Even if it can be said that the order of commitment pursuant to Penal Code, section 1368 constitutes an adjudication of incapacity within the meaning of Civil Code, section 40 (see, however, *Carroll* v. *Carroll,* 16 Cal.2d 761, 766 [108 P.2d 420]), plaintiff made no conveyance or other contract, nor delegated any power nor waived any right after the order of commitment on April 20, 1967. The deed of trust existed before plaintiff purchased the property, and he assumed its obligations when he purchased the property in 1965.

■ Plaintiff's suggestion that Civil Code, section 2924 which permits foreclosure without actual notice to the current record owner violates due process of law is without merit. (*Scott* v. *Paisley,* 271 U.S. 632 [70 L.Ed. 1123, 46 S.Ct. 591]; *Lancaster Security Inv. Corp.* v. *Kessler,* 159 Cal.App.

2d 649, 654-655 [324 P.2d 634]; *Curti* v. *Pacific Mtg. Guar. Co.,* 87 F.2d 42, 43; *Davidow* v. *Lachman Bros. Inv. Co.,* 76 F.2d 186, 188.) Plaintiff's reliance upon *Covey* v. *Town of Somers,* 351 U.S. 141 [100 L.Ed. 1021, 76 S.Ct. 724] is misplaced. That case involved a judicial foreclosure of a tax lien by a tax district under the laws of New York State. The court held that this direct action by a government agency to foreclose a tax lien on the property of a person known to be incompetent was "a taking . . . without due process of law." (351 U.S. at p. 147 [100 L.Ed. at p. 1026, 76 S.Ct. at p. 727].) As noted in *Davidow* v. *Lachman Bros. Inv. Co., supra,* " 'The Fourteenth Amendment has reference exclusively to state action, and not to any action by individuals. . . .' " (76 F.2d at p. 188.)

■ Viewing the situation most favorably to plaintiff, the most that can be said is that, knowing of his alleged legal disability, defendants Ontario Savings and Ontario Title may have been guilty of some fraud or imposition upon plaintiff in proceeding with the foreclosure and trustee's sale and that, as between plaintiff and those defendants, the trustee's sale may have been voidable. It would not follow, however, that the subsequent sale to Iler would be invalid, for it is well established that a subsequent good faith purchaser for value and without notice of the fraud or imposition is not chargeable with the fraud or imposition of his predecessor and takes title free of any equity of the person thus defrauded or imposed upon. (*Marlenee* v. *Brown,* 21 Cal.2d 668, 675 [134 P.2d 770]; *Morrow* v. *Graves,* 77 Cal. 218, 219-220 [19 P. 489]; *Fish* v. *Benson,* 71 Cal. 428, 440-441 [12 P. 454]; *Karrell* v. *First Thrift of Los Angeles,* 104 Cal.App.2d 536, 539 [232 P.2d 1].)

*Bona Fide Purchaser—Notice*

■ Plaintiff contends that Iler is charged with constructive notice of his alleged insanity because a "decree of incompetency is notice to the world" of the incapacity to make a valid contract. For this proposition plaintiff relies upon *Hellman Coml. Trust & Sav. Bank* v. *Alden,* 206 Cal. 592, 604 [275 P. 794].

Even were we to assume once again that the court order of April 20, 1967, made pursuant to Penal Code, section 1368 constituted an adjudication of incompetency, plaintiff's reliance upon *Hellman* for the sweeping proposition that such order constitutes constructive notice to the world is unjustified. It is true that the opinion contains the quoted language, but considering the facts of the case, the most the court could have meant by the language is that anyone who deals with an incompetent after his adjudication as such is charged with notice of his incompetency.[4] Here,

---

[4]Actually, the court was not faced with a problem of notice at all. The question was whether a judgment declaring incompetency and appointing a guardian was,

Iler never had any dealings whatever with plaintiff, and, according to his unopposed declaration, had no actual knowledge of plaintiff's connection with the property or even of his existence.

■ It is true, of course, that Iler is charged with constructive notice that plaintiff was a former owner, inasmuch as plaintiff's former ownership was a matter within the chain of title. (Civ. Code, § 1213.) The question presented, therefore, is whether, in order to qualify as a bona fide purchaser without notice, a purchaser from a purchaser at a trustee's sale must check the criminal records of every court of competent jurisdiction in the county, the state or even the nation, to ascertain whether the prior owner whose interest was foreclosed had been committed to a mental hospital prior to the trustee's sale under the provisions of Penal Code, section 1368 or a similar statute. We think not.

Plaintiff argues that proceedings under Penal Code, section 1368 are not criminal proceedings, relying upon *People* v. *Fields,* 62 Cal.2d 538 [42 Cal. Rptr. 833, 399 P.2d 369, 16 A.L.R.3d 708] in which the court stated that such a proceeding is special rather than criminal (62 Cal.2d at p. 540), but nevertheless recognized the defendant's right to counsel because the proceedings " 'must be regarded as part of the proceedings in the criminal case.' " (62 Cal.2d at p. 542.) This argument, however, misses the point. Whether they be called "special" or "criminal" such proceedings arise out of the criminal case, and, were we to adopt the rule contended for by plaintiff, a prospective purchaser would be required to examine the criminal records of every justice, municipal and superior court in every county in the state, if not the nation.

■ It is not every legal action or court order or judgment that imparts constructive notice to a prospective purchaser of real property. Section 27282 of the Government Code authorizes the recordation of judgments affecting the title to or possession of real property. Unless such a judgment is recorded in the county where the property is situated, no constructive notice is imputed to the purchaser. (*Stout* v. *Gill,* 110 Cal.App. 445, 448-449 [294 P. 446].) ■ Even in lawsuits directly affecting the title to real property filed in the county where the property is situated, the court records do not constitute constructive notice thereof unless and until a notice of the pendency of such action is recorded in the office of the county recorder. (Code Civ. Proc., § 409.) ■ Since actions and judgments directly affecting the title to real property do not constitute constructive notice unless recorded in the office of the recorder, we fail to see how an order of commitment pursuant to Penal Code, section 1368 could, in the absence of

without other evidence, sufficient to establish the invalidity of the incompetent's subsequent endorsement of a check. (206 Cal. at pp. 602-605.)

recordation, be held to constitute constructive notice to a purchaser of real property who is not dealing with and has never dealt with the person affected by the order.

The judgment is affirmed.

Tamura, Acting P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied October 9, 1970, and appellant's petition for a hearing by the Supreme Court was denied November 18, 1970.