[Civ. No. 11967. Fourth Dist., Div. Two. Nov. 21, 1972.]

ARCHIE G. STRUTT, Plaintiff and Appellant, v.
ONTARIO SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

869

## COUNSEL

Robert W. Battin for Plaintiff and Appellant.

Kellett, Oksner & Spada, Fitzpatrick & Wiley and D. Joseph Spada for Defendants and Respondents.

## OPINION

**KAUFMAN, Acting P. J.**—On theories of fraud, negligence and unjust enrichment plaintiff sought damages, compensatory and punitive, against defendants Ontario Savings and Loan Association (hereinafter Ontario Savings) and Ontario Title Service Company, Inc. (hereinafter Ontario Title) for wrongful exercise of a private power of sale in a deed of trust and conversion of personal property. Plaintiff's third amended complaint also sought declaratory relief. From an adverse judgment on all counts following trial to the court without jury, plaintiff appeals.

## Pertinent Facts

In April 1965, plaintiff purchased certain real property consisting of several rental units in the City of Costa Mesa, County of Orange. He purchased the property for a total consideration of approximately $36,000 including the assumption of an existing promissory note secured by a first deed of trust in favor of Ontario Savings as beneficiary and Ontario Title as trustee and the assumption of an existing promissory note secured by a second deed of trust in favor of one Ira Livingston.[1] Until sometime in February 1967, plaintiff occupied one of the units as his residence and he had therein and in and about the property items of personal property.

On December 15, 1966, plaintiff defaulted in making the payments due under the promissory note secured by the first deed of trust and made no payments thereafter. As of that date the unpaid principal balance on the note secured by the first deed of trust was $23,115.41.

Sometime in early February 1967, plaintiff left the environs of Southern California and made a trip to Canada and several states within the United States in an attempt, according to his testimony, to liquidate other assets to provide funds to cure his defaults in payment on the first trust deed note. He did not inform either Ontario Savings or Ontario Title of his departure nor of the alleged purpose of his trip, nor, in fact, did he communicate with either of them in any way.

, Pursuant to the terms of the first deed of trust and in compliance with the provisions of section 2924 of the California Civil Code, on February 9, 1967, a notice of default was recorded and thereafter notice of sale was posted and published. A copy of the notice of default and notice of sale was sent by registered mail to plaintiff at his last known address, but, apparently, these were not actually received by plaintiff.

Under the assignment of rent provisions of its trust deed, Ontario Savings gave notice to the occupants of the rental units to pay their rent directly to Ontario Savings as a result of which it received from tenants rents amounting to $665.17 which were applied by Ontario Savings to plaintiff's indebtedness. The rentals thus received by Ontario Savings were found by the court to be "substantially insufficient to cure the delinquency on the Plaintiff's indebtedness under the first trust deed note . . . ."

On June 1, 1967, pursuant to the provisions of the first deed of trust and in compliance with California Civil Code, section 2924, the property was sold by Ontario Title as trustee to Ontario Savings, the only bidder at the

---

[1] In the record the surname of this person is sometimes set forth as Livingstone.

sale, for $23,443.40, the amount of plaintiff's indebtedness to Ontario Savings on that date. Subsequently, by grant deed dated July 3, 1967 and recorded September 1, 1967, Ontario Savings sold the property to James Iler for $32,500 ($6,500 cash down payment and a new loan of $26,000). After deduction of the costs of sale, Ontario Savings received a check in the amount of $30,719.65 which left Ontario Savings with a net gain of approximately $6,000.[2] On June 1, 1967, the unpaid indebtedness to Livingston secured by second deed of trust ("sold out" by foreclosure on the first trust deed) amounted to approximately $6,000.

Meanwhile, on March 7, 1967, plaintiff was arrested for an alleged violation of section 476a of the California Penal Code (issuing a check without sufficient funds), and on March 24, 1967, criminal proceedings were suspended and proceedings instituted in the Orange County Superior Court under Penal Code, section 1368 to determine plaintiff's "ability to understand the nature and purpose of the proceedings taken against him and to assist counsel in the conduct of his defense in a rational manner." On April 20, 1967, the Orange County Superior Court made an order committing plaintiff to Atascadero State Hospital "for care and treatment until such time as the superintendent shall certify that [he] can assist counsel in his defense." In the order it was recited that "the defendant is adjudged and decreed presently unable to assist counsel in his defense." The word "insane," which appeared as part of the duplicated form, was specifically stricken out and the words "unable to assist counsel in his defense" substituted therefor. Under date of June 15, 1967, the superintendent of Atascadero State Hospital executed a "Certification of Sanity," which stated that Mr. Strutt "is now able to understand the nature of the charges against him and can cooperate rationally with his attorney in his defense. In accordance with Section 1372 of the Penal Code, I hereby certify that said defendant is now sane." On June 30, 1967, in the Orange County Superior Court, the section 1368 proceedings were terminated and criminal proceedings were reinstituted. The case was remanded to the Municipal Court of the Newport Judicial District for further proceedings, plaintiff was released on his own recognizance, and subsequently, apparently, the charges were dismissed in the interest of justice.

On May 24, 1967, Ontario Savings first became aware that plaintiff was in Atascadero State Hospital when it was contacted by the guardianship division of the Department of Mental Hygiene and advised that the guardianship division was making an investigation of plaintiff's property, includ-

---

[2]Apparently Ontario Savings absorbed some of the foreclosure costs or put additional money into the property, for it carried the property on its books at a value of $24,312.

ing the rental units, to determine what action, if any, should be taken with respect thereto. The guardianship division thereafter completed its investigation and made a determination that plaintiff had no equity in the rental units and that plaintiff's personal property located in and about the real property was reasonably valued at $100. Ontario Savings then paid $100 to the guardianship division for said personal property on behalf of plaintiff and thereafter took possession of the same. No request was received by Ontario Title or Ontario Savings from the Department of Mental Hygiene or anyone else for a postponement of the trustee's sale.

## Contentions on Appeal

Originally, in addition to damages, plaintiff sought to invalidate the trustee's sale as well as the subsequent sale to Iler and named Iler as a party defendant. Iler had summary judgment which was affirmed on appeal by this court in *Strutt* v. *Ontario Sav. & Loan Assn.,* 11 Cal.App.3d 547 [90 Cal.Rptr. 69] [petition for hearing by the California Supreme Court denied November 18, 1970]. We there held that, assuming some fraud, imposition or breach of obligation by Ontario Title or Ontario Savings, the trustee's sale was not void but at most voidable; that Iler was a bona fide purchaser for value without notice; and that, as to him, the sales could not be set aside. Thereafter the case proceeded to trial against the remaining defendants with the result as indicated above. On this appeal plaintiff makes the following contentions.

(1) "California Civil Code section 2924 denies constitutional due process and equal protection on its face under both California and federal law to the extent it permits a creditor to confiscate a debtor's home, furniture and personal belongings without a preliminary hearing."

(2) "California Civil Code section 2924 does not grant constitutional due process *as applied* to a debtor actually known to be incarcerated in a mental institution without a court appointed guardian?" (Original italics.)

(3) "If one of two innocent people must bear a loss—the one with the greatest opportunity to avoid it, should bear it."

(4) "The omission of requested material findings requires reversal."

(5) "The findings are not supported by substantial evidence that will in turn support the judgment."

(6) "The trial court erred in dismissing plaintiff's cause of action for declaratory relief?"

## Disposition

Plaintiff's contentions, if properly made, would present questions of grave concern and considerable import. In advancing these contentions, however, plaintiff has largely ignored findings of fact made by the trial court on substantial evidence that all but make unnecessary consideration of the weighty questions presented by plaintiff's view of the case.

Among the findings of fact made by the trial court are the following: "Plaintiff was under no legal incapacity from the time he purchased the apartment property in April, 1965 until at least after the trustee's sale of the property on June 1, 1967." "The reasonable value of all of plaintiff's personal property located in and on said apartment property was $100.00 on June 16, 1967, when Ontario Savings paid $100.00 therefor." "Neither Ontario Savings nor Ontario Title exercised any dominion over Plaintiff's personal property until after Ontario Savings had purchased the apartment property and paid on Plaintiff's behalf $100.00 for said personal property." "The fair market value of the apartment property at the time of the trustee's sale on June 1, 1967 did not exceed the balances due on the first and second trust deed notes plus the costs of sale." "Ontario Savings and Ontario Title accurately and fairly accounted to Plaintiff for any moneys received by them on behalf of the Plaintiff and for all expenditures incident to the trustee's sale of the apartment property." "All of the actions of Ontario Savings and Ontario Title with respect to Plaintiff and his property interests were performed in more than a reasonable manner and were free from any taint of fraudulent conduct or imposition."

Among the court's conclusions of law are the following. "There was no conversion on the part of either Ontario Savings or Ontario Title of any of the Plaintiff's property." "Plaintiff suffered no damages by reason of any acts committed by either Ontario Savings or Ontario Title."

Although plaintiff makes the general contention that the findings are not supported by substantial evidence, the only finding as to which he makes any specific argument is the finding that his personal property located in and about the rental units was reasonably valued at $100 on June 16, 1967. Even as to this finding, in making his argument, he adverts only to the testimony favorable to him, i.e., his own testimony that furniture on the premises was worth $1,200 and that his other personal property in and about the rental units was worth $900.

■ An appellate court is not required to consider alleged errors where the appellant merely complains of them without pertinent argument. (*Estate of Randall,* 194 Cal. 725, 728-729 [230 P. 445]; *Richard* v. *Richard,*

123 Cal.App.2d 900, 903 [267 P.2d 867].) ■ Moreover, to effectively raise the issue of sufficiency of the evidence, the appealing party must present to the appellate court all of the evidence touching upon the question involved. When the appellant fails to abide by this well established and necessary rule of appellate practice, the appellate court is entitled to indulge in a presumption that the evidence sustains the determination of the trial court. (*Davis* v. *Lucas,* 180 Cal.App.2d 407, 409-410 [4 Cal.Rptr. 479]; *Gold* v. *Maxwell,* 176 Cal.App.2d 213, 217-218 [1 Cal.Rptr. 226]; *Kruckow* v. *Lesser,* 111 Cal.App.2d 198, 200 [244 P.2d 19].) In any event, as here and hereinafter appears, the crucial findings of fact of the trial court are supported by substantial evidence, and although one of the court's conclusions of law set forth above is erroneous, such error, in view of the findings, does not dictate reversal.

■ Turning first to the problem concerning plaintiff's personal property, the trial court's conclusion that defendant Ontario Savings did not convert said property must be held erroneous. The rights and duties of the Department of Mental Hygiene concerning a patient's property was in 1967 governed by Welfare and Institutions Code, sections 6650-6667 (now §§ 7275-7294, added by Stats. 1967, ch. 1667, operative July 1, 1969.) The department had a duty to cause an investigation to be made to determine the nature, extent and value of plaintiff's property. (Welf. & Inst. Code, § 6653 [now § 7278].) The department had the right to accept moneys owing to plaintiff not in excess of $3,000 (Welf. & Inst. Code, § 6661 [now § 7289]) for deposit in plaintiff's personal deposit fund (Welf. & Inst. Code, § 6657 [now § 7281]). The right to receive such funds, however, does not authorize the Department to compromise disputed claims of a patient. (*Young* v. *Young,* 14 Cal.App.3d 1, 4-5 [92 Cal.Rptr. 148].) The department also had the right to take into possession for safekeeping plaintiff's personal property (Welf. & Inst. Code, § 6660.5 [now § 7288]), but such right did not authorize it to sell any such personal property except in conformity with the code section last cited [patient likely to remain indefinitely; sale at public auction]. Clearly, the statutory scheme did not and does not contemplate sale of a patient's personal property of disputed value in a private sale without appointment of a guardian and court authorization. (See Welf. & Inst. Code, §§ 6660 [now § 7284] and 6655 [now § 7279].)

Technically, therefore, when Ontario Savings paid the Department of Mental Hygiene $100 and took possession of plaintiff's personal property on or after June 16, 1967, it converted that property. (*Beverly Finance Co.* v. *American Casualty Co.,* 273 Cal.App.2d 259, 264-265 [78 Cal. Rptr. 334]; *Culp* v. *Signal Van & Storage,* 142 Cal.App.2d Supp. 859,

861 [298 P.2d 162]; Rest.2d Torts, § 229.) However, the measure of damages for conversion of personal property is the value of the property at the time of the conversion with interest thereon from that time. (Civ. Code, § 3336; *Beverly Finance Co.* v. *American Casualty Co., supra,* 273 Cal. App.2d at p. 265.) Since the trial court found that the plaintiff's personal property was worth no more than $100 when Ontario Savings paid $100 therefor to the Department of Mental Hygiene on plaintiff's behalf, plaintiff was not entitled to recover additional damages for such conversion in this action if the court's finding is supported by substantial evidence.[3] The extent, nature and value of plaintiff's personal property in and about the rental units were all the subject of conflicting testimony and evidence. The trial court's finding on this point is, therefore, supported by substantial evidence and is binding upon us on appeal. *(Beverly Finance Co.* v. *American Casualty Co., supra.)*

We turn next to plaintiff's contentions for invalidity of the trustee's sale. Such invalidity is urged on two bases: first, that such sale, being governed by Civil Code, section 2924, is violative of constitutional guarantees of due process and equal protection under the principles explicated in such cases as *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Fuentes* v. *Shevin,* 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983]; *Blair* v. *Pitchess,* 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 47 A.L.R.3d 1206]; *Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]; and *Adams* v. *Egley,*\* 338 F.Supp. 614 (see also *Mendoza* v. *Small Claims Court,* 49 Cal.2d 668 [321 P.2d 9]; Annot. 45 A.L.R.3d pp. 1233 et seq.); and second, that Civil Code, section 2924 is unconstitutional as applied in this case on the same bases, that is, to the extent it authorizes exercise of a private power of sale against one whom the trustee actually knows to be incompetent.

Both these contentions run head-on into the finding by the trial court that the fair market value of the apartment property at the time of the trustee's sale on June 1, 1967 did not exceed the balances due on the first and second trust deed notes plus the costs of sale and the trial court's conclusion of law that plaintiff suffered no damage by reason of any acts committed by defendants. Prior to the commencement of this action,

---

[3]The court's finding that all of the actions of Ontario Savings and Ontario Title with respect to plaintiff and his property interests were performed in more than a reasonable manner and were free from any taint of fraudulent conduct or imposition negates any basis for punitive damages. (See Civ. Code, § 3294.)

\*An appeal in this case is pending in the United States Court of Appeals, Ninth Circuit. (Case No. 72-1484, filed on May 9, 1972.)

the property was, as previously noted, sold by Ontario Savings to James Iler, a bona fide purchaser for value without notice, and the judgment that the trustee's sale and the subsequent sale could not be set aside as between plaintiff and Iler has long since become final. (*Strutt* v. *Ontario Sav. & Loan Assn., supra,* 11 Cal.App.3d 547 [petition for hearing by the California Supreme Court denied November 18, 1970].) Under these circumstances, the only remedy plaintiff could possibly have against the remaining parties defendant to this action was damages for some wrong committed by Ontario Title or Ontario Savings making the trustee's sale voidable as between plaintiff and those defendants. But the trial court has found, in essence, that plaintiff had no equity in the real property at the time of the trustee's sale and has suffered no damages as a result thereof. If this finding of the trial court is supported by substantial evidence, we fail to perceive how plaintiff would be benefitted should we find merit in either of his contentions for invalidity of the trustee's sale.

The finding of the trial court that the fair market value of the apartment property at the time of the trustee's sale on June 1, 1967, did not exceed the balances due on the first and second trust deed notes plus the costs of sale is supported by substantial evidence. (See fn. 2, *ante,* and accompanying text.) Plaintiff places considerable emphasis on the fact that, shortly after the trustee's sale, the property was resold by Ontario Savings to Iler for $32,500 and urges that the net gain to Ontario Savings of approximately $6,000 is a sum to which he should be equitably entitled. In this he is incorrect. In the first place, it is common knowledge that at forced sales such as a trustee's sale the full potential value of the property being sold is rarely realized, and, in fact, Ontario Savings was the only bidder at the trustee's sale. More importantly, there existed at the time of the trustee's sale an indebtedness to Livingston secured by a second deed of trust in the approximate amount of $6,000, and had the property sold at the trustee's sale for more than the amount of the indebtedness to Ontario Savings, the holder of the second trust deed note would have been equitably entitled to any such "surplus" up to the amount of the indebtedness owed him. (*Dockrey* v. *Gray,* 172 Cal.App.2d 388, 391-392 [341 P.2d 746]; see *Sohn* v. *California Pac. Title Ins. Co.,* 124 Cal.App.2d 757, 766 [269 P.2d 223]; Cal. Land Security and Development (Cont. Ed.Bar 1960) § 13.28, p. 328; Ogden's Cal. Real Property Law (1956) § 17.71, p. 669.) As noted in the statement of facts taken from the findings of the trial court, the net gain to Ontario Savings on the subsequent sale to Iler, which involved refinancing and sale through real estate brokers, was approximately $6,000, and the indebtedness secured by the second trust deed was in approximately the same amount.

In view of the foregoing, it is dubious whether any further discus-

sion of plaintiff's contentions concerning the constitutionality of Civil Code, section 2924 is warranted. However, we are constrained to say that, in any event, we find them unmeritorious. ■ Ignoring the proposition that the constitutional guarantees of due process and equal protection of laws apply only to state, as opposed to private, conduct and the troublesome problems that proposition would present in respect to Civil Code, section 2924 (see *Strutt* v. *Ontario Sav. & Loan Assn., supra,* 11 Cal.App.3d at pp. 553-554 and cases there cited; see also *Moose Lodge No. 107* v. *Irvis,* 407 U.S. 163, 169 [32 L.Ed.2d 627, 635, 92 S.Ct. 1965, 1971]; but cf. *Reitman* v. *Mulkey,* 387 U.S. 369 [18 L.Ed.2d 830, 87 S.Ct. 1627]; *Adams* v. *Egley, supra,* 338 F.Supp. at pp. 617-618), particularly in view of the fact that Civil Code, section 2924 is not an enabling or authorizing statute at all but, rather, a statute restricting and limiting the exercise of private powers of sale for the benefit of debtors (see *Smith* v. *Allen,* 68 Cal.2d 93, 96 [65 Cal.Rptr. 153, 436 P.2d 65]), the answer to the contention based on *Sniadach, Fuentes, Blair, Randone* and *Adams* is apparent. ■ Under the provisions of Civil Code, section 2924, there is no immediate seizure of the property nor any immediate impairment of the debtor's rights in respect to the property. He is given by the statute a minimum of 90 days in which he can refinance or sell the property or, more to the point, if he disputes the facts set forth in the notice of default, or has some legal or equitable defense to foreclosure, he may within the statutory period institute an action to enjoin the sale and thereby obtain the judicial hearing contemplated by the cases cited.

■ We have some difficulty understanding plaintiff's contention that Civil Code, section 2924 is unconstitutional as applied. We have heretofore held that the notice provisions of Civil Code, section 2924 (see also Civ. Code, § 2924b) comport with due process. (*Strutt* v. *Ontario Sav. & Loan Assn., supra,* 11 Cal.App.3d at pp. 553-554.) While the trial court declined to adopt a finding that plaintiff had actual knowledge of the pending foreclosure sale, the evidence establishes that several notices concerning the sale were mailed to him at his last known address, and his failure to receive them was undoubtedly the result of his leaving the state after his initial default in payment without in any way communicating with defendants. "As noted in *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317 [94 L.Ed. 865, 875, 70 S.Ct. 652, 658], '. . . it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights. [Citations.]' " (*Estate of Horman,* 5 Cal.3d 62, 79 [95 Cal.Rptr. 433, 485 P.2d 785].)

What we believe plaintiff is truly urging is that either constitutional principles (in the event of state action) or equitable principles (in the event of private action) dictate that a trustee under a deed of trust containing a private power of sale not exercise such power of sale without first causing the appointment of a guardian of the estate of the debtor when the trustee has actual knowledge that the debtor is incompetent. Although we have heretofore rejected the proposition that supervening incompetency of a debtor deprives a trustee under a deed of trust containing a private power of sale of the *power* to convey title to the property to a bona fide purchaser without notice at a trustee's sale *(Strutt* v. *Ontario Sav. & Loan Assn., supra,* 11 Cal.App.3d at p. 553) a rule that a trustee with actual knowledge of the incompetency of the debtor may not, as between the trustee and the debtor, *rightfully* proceed with a foreclosure sale without first causing a guardian of the debtor's estate to be appointed would, on first impression, appeal to our sense of justice. But, once again, plaintiff is faced with an adverse finding by the trial court. As previously noted, the trial court found: "Plaintiff was under no legal incapacity from the time he purchased the apartment property in April, 1965 until at least after the trustee's sale of the property on June 1, 1967." Again, this finding of the trial court is supported by substantial evidence and is determinative of the question raised by plaintiff.

Plaintiff's attempt to equate a commitment under Penal Code, section 1368 with an adjudication of incompetency is mistaken. The criterion under Penal Code, section 1368 is whether the defendant is able to understand the nature and purpose of the proceedings taken against him and to assist counsel in the conduct of his defense in a rational manner. *(People* v. *Brock,* 57 Cal.2d 644, 648-649 [21 Cal.Rptr. 560, 371 P.2d 296]; see also *In re Franklin,* 7 Cal.3d 126, 141, fn. 9 [101 Cal.Rptr. 553, 496 P.2d 465].) An incompetent for whom a guardian should be appointed is a "person, whether insane or not, who by reason of old age, disease, weakness of mind, or other cause, is unable, unassisted, properly to manage and take care of himself or his property, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons." (Prob. Code, § 1460; *Guardianship of Walters,* 37 Cal.2d 239, 245 [231 P.2d 473].) A commitment to a state hospital pursuant to Penal Code, section 1368 is not the equivalent of an adjudication of either insanity or incompetency. (Cf. *Hsu* v. *Mt. Zion Hospital,* 259 Cal.App.2d 562, 571-573 [66 Cal.Rptr. 659] and authorities there cited; cf. also *In re Franklin, supra.)* There was considerable evidence before the trial court that plaintiff was not incompetent with respect to the management of his affairs. Shortly before his arrest on bad check charges, he had, by his own testimony, left on a trip in an attempt to liquidate other assets in order to cure

his defaults in payment on his obligation to Ontario Savings. Employees of the Department of Mental Hygiene testified that they made an investigation of several properties plaintiff claimed to own, and it is a fair inference that the information prompting such investigation, including information concerning the pendency of Ontario Savings' foreclosure sale, was imparted to the department by plaintiff himself.

Plaintiff requested special findings on several points which the trial court declined to make, and plaintiff urges that reversal is required for failure of the court to make material findings. Most of the points upon which plaintiff requested special findings were either immaterial or questions of law, but two requested findings require consideration. Plaintiff requested the court to make a finding of the reasonable rental value of the apartments between February 9 and June 1, 1967 and the reasonable value of all personalty on or about the real property between February 9 and June 1, 1967. It is plaintiff's theory that defendant Ontario Savings was a "mortgagee in possession" and thus accountable for the reasonable rental value of the property as opposed to the actual rents collected. Inferentially, although not expressly, it is apparently plaintiff's position that as a "mortgagee in possession" defendant Ontario Savings was also accountable for the unexplained disappearance of any personal property between February 9 and June 1, 1967. (As to the rights and duties of a "mortgagee in possession" generally, see *Murdock* v. *Clarke,* 90 Cal. 427, 438-440 [27 P. 275]; *Johns* v. *Moore,* 168 Cal.App.2d 709, 713-714 [336 P.2d 579]; 1 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 726-727.)

For the proposition that Ontario Savings was a "mortgagee in possession" plaintiff relies upon *Childs etc. Co.* v. *Shelburne Realty Co.,* 23 Cal.2d 263, 267 [143 P.2d 697]. But in *Childs* the court noted: "The bank's possession was established by making Shelburne its agent to collect rents *and manage the property.* [Citations omitted.]" (23 Cal.2d at p. 267, italics supplied; see also *Johns* v. *Moore, supra,* 168 Cal.App.2d at p. 714.) The only evidence that defendant Ontario Savings took possession of the real property prior to the trustee's sale is that following plaintiff's default it sent letters to the tenants requesting payment of rent to it and that pursuant thereto some of the tenants paid their rent to Ontario Savings. It also appears that after plaintiff left the state, Mr. Livingston, the holder of the second trust deed note and an acquaintance of plaintiff, took possession of the apartment plaintiff had been occupying and paid some rent to Ontario Savings after deducting some small amounts he had paid out for minor work done by him on the property (mowing, trimming, gas bill for $1.90 and $3.46 for replacing an electrical switch). Plaintiff characterizes Mr. Livingston as Ontario Savings' "de facto resident agent," but

plaintiff made no request for a special finding of fact as to whether Mr. Livingston was an agent for Ontario Savings, plaintiff's agent or acting on his own behalf as holder of the second trust deed note. We are therefore entitled to imply from the other findings adverse to plaintiff a finding that Mr. Livingston was not acting as agent for Ontario Savings. (See 4 Witkin, Cal. Procedure (2d ed. 1971) pp. 3140-3141 and cases there cited.) As previously noted, the court expressly found that neither Ontario Savings nor Ontario Title exercised any dominion over plaintiff's personal property until after Ontario Savings had purchased the apartment property and paid $100 to the Department of Mental Hygiene on plaintiff's behalf. There follows from this finding an implied finding that Mr. Livingston was not the agent of either defendant, for it is undisputed that he took possession of the apartment in which plaintiff had been living and in which plaintiff claimed to have some of the personal property in question. Moreover, as previously noted, the trial court expressly found that Ontario Savings and Ontario Title accurately and fairly accounted to plaintiff for any moneys received by them on behalf of plaintiff.

Neither in the trial court nor in this court has plaintiff challenged the right of Ontario Savings to attempt to collect rents prior to the trustee's sale by means of letter requests therefor to the tenants and that question is not therefore before us. (See Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) § § 2.12 and 2.13, pp. 17-18.) On the contrary, implicit in plaintiff's contention that Ontario Savings constituted a "mortgagee in possession" is the premise that it was entitled to collect rents after default in this manner. ▆▆▆ Plaintiff has cited no case, and we have discovered none, holding that a beneficiary or trustee who, after default, does no more than collect rents by means of a letter request to the tenants and who does not undertake management of the property is a "mortgagee in possession." We think he is not. That is not to say that a beneficiary or trustee under a deed of trust who receives rents from the property prior to a trustee's sale is not accountable for the rents thus collected, but as several times heretofore noted, the trial court found that defendants did fairly and accurately account to plaintiff for the rents received.

▆▆▆ Even if Ontario Savings was a "mortgagee in possession" the findings of the trial court that it rendered a fair and accurate accounting to plaintiff is, on the record before us, dispositive of plaintiff's claim on this point. While a "mortgagee in possession" is in some respects treated as a trustee, in respect to his obligation to account for rents, " '[t]he mortgagee may be held chargeable for rents and profits not actually received where, and only where, he has failed to use reasonable diligence, or where he is guilty of fraud, gross negligence, or wilful default . . . .' " (*Johns* v.

*Moore, supra,* 168 Cal.App.2d at p. 713; accord, *Murdock* v. *Clarke, supra,* 90 Cal. at p. 438.) It was incumbent upon plaintiff to show that the rents actually received were less than that which should have been received and that this was caused by some negligence or wrongdoing on the part of defendants. Plaintiff made no such showing, and, as previously noted, the trial court found that all of the actions of defendants with respect to plaintiff and his property interests were performed in more than a reasonable manner.

In the absence of any showing of negligence or wrongful conduct on the part of defendants with respect to plaintiff's personal property between February 9 and June 1, 1967, and in view of the trial court's express finding to the contrary and its further findings that defendants exercised no dominion over plaintiff's personal property until after June 16, 1967 and that the value of plaintiff's personal property on June 16, 1967 was $100, the value of plaintiff's personal property between February 9 and June 1, 1967 was immaterial, and the trial court was not required to make any finding thereon.

Plaintiff's contention that the trial court erred in denying his request for declaratory relief is unmeritorious. Plaintiff's alleged right of action against defendants was fully matured at the time he filed his action, and declaratory relief was properly denied. (*Travers* v. *Louden,* 254 Cal. App.2d 926, 931-932 [62 Cal.Rptr. 654]; 3 Witkin, Cal. Procedure (2d ed. 1971) pp. 2342-2343.)

No reversible error appearing, the judgment is affirmed.

In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 26(a).)

Tamura, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 7, 1973.